IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> PLAINTIFF, <br><br> v. <br><br> STEVEN BRICE WIBRACHT, *et al.* <br><br> DEFENDANTS. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | ADV. PRO. NO. 24-05009-RBK |

## TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S OPPOSITION TO MOTION TO DISMISS [ADV. DKT. 27]

Travelers Casualty and Surety Company of America ("Travelers") files this Opposition ("Opposition") to Defendants Steven Wibracht and Erin Wibracht's ("Debtors" or "Wibrachts") Motion to Dismiss (the "Motion to Dismiss") [Adv. Dkt. 27] and states:

### PRELIMINARY STATEMENT

On March 19, 2024, Travelers filed a complaint [Adv. Dkt. 1, as amended at Adv. Dkt. 19][1] (the "Rescission Complaint") asserting three declaratory judgment claims. As a remedy, Travelers seeks rescission of that certain settlement agreement and mutual general release dated November 23, 2022 (the "Settlement Agreement") by and between Travelers and the Debtors. The Wibrachts request dismissal under Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 7012, which incorporates by reference Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). They incorrectly argue that the Court lacks subject matter jurisdiction, and the Rescission Complaint fails to state claims for relief. The Court should deny the Motion to

---

[1] On April 15, 2024, Travelers filed an amended complaint [Adv. Dkt. 19] that is substantially like the original Rescission Complaint, except Travelers withdrew its request for money judgment as relief.

Dismiss.  The Rescission Complaint, as pleaded, meets the standard under FRCP 12(b)(6), and this Court not only has jurisdiction, it has <u>exclusive</u> jurisdiction over the Rescission Complaint.

FRCP 12(b)(6) motions are disfavored and rarely granted in the Fifth Circuit.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  The Court "must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff."  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that defendants may seek to introduce in response."  *Ramos v. Taylor*, 646 F.Supp.3d 807, 814 (W.D. Tex. 2022) (internal citations omitted) (refusing to consider exhibits attached to defendants' motion to dismiss because they were neither referenced nor attached to plaintiff's complaint).

Rather than follow the FRCP 12(b)(6) standard, the Wibrachts fabricate claims that are not pleaded in the Rescission Complaint.  The Wibrachts then argue that their re-fashioned claims do not state viable claims for relief.  For example, the Wibrachts request this Court to dismiss the Rescission Complaint because, they argue, under FRCP 60(b)(1)-(3), Travelers is time-barred from requesting relief from a judgment, order or proceeding.  From this premise, the Wibrachts incorrectly assert that this Court lacks jurisdiction over the Rescission Complaint.

Travelers, however, does not seek relief from a judgment, order or proceeding, and FRCP 60(b)(1)-(3) does not apply.  Count I of the Rescission Complaint asserts a claim for declaratory judgment and rescission of the Settlement Agreement on the basis that the Wibrachts lacked authority to release property of the estate.  Counts II and III of the Rescission Complaint seek rescission of the Settlement Agreement based on mistake and fraudulent inducement, respectively.  None of these claims fall within the ambit of FRCP 60(b)(1)-(3).

To resolve Travelers' claims, the Court must determine whether the claims that the Wibrachts purported to release in the Settlement Agreement were property of the estate.  It is well-established that "a proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A)."  *In re Royce Homes, LP*, 652 B.R. 488, 495-96 (Bankr. S.D. Tex. 2023) (quoting *In re Duval Cty. Ranch Co.*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994)).  Core proceedings fall well within the ambit of this Court's subject matter jurisdiction.  *Id.*  Thus, not only does this Court have jurisdiction over the Rescission Complaint, as explained below it has <u>exclusive jurisdiction</u> over the Rescission Complaint.

Finally, the Wibrachts add facts that were not pleaded in the Rescission Complaint and append documents to their Motion to Dismiss labeled Exhibits 1 through 3 that were not referenced in the Rescission Complaint.  "If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)."  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  Thus, to the extent applicable, summary judgment should be denied as set forth below.

## **BACKGROUND**

### A.  **The Chapter 7 Case.**

1.      On September 30, 2017 (the "<u>Petition Date</u>"), the Wibrachts filed a voluntary chapter 7 petition for relief under the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*), commencing bankruptcy case no. 17-52300-RBK (the "<u>Bankruptcy Case</u>") in this Court.  Compl. ¶ 7.

2.      On March 14, 2018, Travelers filed Proof of Claim No. 18 stating a claim of $12,561,301.08 (the "<u>Proof of Claim</u>").  *Id.* at ¶ 26.  The Proof of Claim sought indemnification from the Wibrachts based upon an indemnity agreement.  Prior to the Petition Date, Travelers sought judgment against the Wibrachts under the same indemnity agreement in the U.S. District Court for the Western District of Texas (the "<u>Western District</u>"), in C.A. No. 5:15-cv-00200

3

("Travelers I"). *Id.* at ¶¶ 18, 26.  Travelers I was stayed by the filing of the Bankruptcy Case.

3.       On April 4, 2018, Travelers filed adversary proceeding no. 18-05203-RBK (the "Discharge Denial Action") to deny the Debtors' discharges under 11 U.S.C. §§ 727(a)(2)-(5) based upon false statements, failure to disclose assets and disposition of assets. *Id.* at ¶ 27. Mr. Wibracht waived his discharge under section 727(a)(10) and the Court approved the waiver on February 26, 2019. *Id.* at ¶ 36.  The Court entered Final Judgment in the Discharge Denial Action against Erin Wibracht on April 24, 2019, and denied her discharge. *Id.* at ¶ 33.

4.       The Bankruptcy Case was closed as a "no asset" case. *Id.* at ¶ 34.

**B.       The Period Between the Closing and Reopening of the Bankruptcy Case.**

5.       On December 17, 2020, Travelers filed a new complaint against the Wibrachts in the Western District ("Travelers II Litigation" or "Travelers II") seeking a money judgment under its indemnity agreement for $14,008,058.76 excluding expenses and attorney fees. *Id.* at ¶ 35.

6.       The Debtors defended against the Travelers II Litigation raising the defenses of *in pari delicto* and illegality as violative of the False Claim Act, 31 U.S.C. §§ 3729-3732 (the "FCA," and the claims, the "FCA Claims") and its related federal regulations. *Id.* at ¶¶ 38-40.

**C.       The Reopened Bankruptcy Case.**

7.       While the Travelers II Litigation was taking place, on March 25, 2021, without notice to Travelers, the Debtors filed a motion to reopen their Bankruptcy Case under seal (the "Motion to Reopen").  In the Motion to Reopen, they stated:

> 11.       In July of 2020, Steven Wibracht received and read a deposition given by Ruben Villarreal ("Villarreal"), the legal, but nominal, owner of one of the entities controlled by Padron, Blackhawk Ventures, LLC ("Blackhawk"), of which Mr. Wibracht had formerly been a minority owner. Mr. Wibracht learned of the deposition in a Complaint filed against himself, his brother Michael Wibracht, and two entities controlled by Padron. The Complaint was filed in *Continental Casualty Company, et al. v Federal Management Solutions, et al.,* No. 5:20-cv-00768, In the United

States District Court for the Western District of Texas, filed July 1, 2020 (the "CNA Collection Action"), in which the Plaintiffs sought to recover on the basis of alleged fraudulent transfers for a judgment entered in its favor on May 31, 2018 against Blackhawk in an earlier filed action, No. 5:17-cv-oo807. Villareal had testified in a post-judgment deposition in or around January of 2020. Villarreal testified that the purpose of a management agreement between Blackhawk and Federal Management Solutions ("FMS") "was to permit persons that were not disabled military veterans to have beneficial (but not legal) ownership of Blackhawk Ventures, so they could capitalize on Mr. Villarreal's status as a disabled veteran, to obtain certain benefits available to disabled veterans under applicable law, including under programs administrated by the United States Small Business Administration." (CNA Collection Action Complaint at 2). Mr. Wibracht was previously not aware that that Padron was alleged to have illegally controlled Blackhawk through FMS and thereby had defrauded the SBA.

12.     Thus, in July of 2020, Mr. Wibracht contacted the SBA Office of the Inspector General ("OIG") to disclose information regarding this fraud. It was only after Mr. Wibracht was interviewed by investigators with the SBA's Office of Inspector General in connection with the SBA's criminal investigation of Padron and others involved with the Padron/MAPCO group of companies, that he began to understand the extent to which Padron's creation and maintenance of an interdependent group of 8(a) minority owned small businesses and SDVOSBs and [sic] constituted a criminal conspiracy to defraud the United States. Because he was being sued by Travelers for indemnity in connection with the bonds it had issued to the companies controlled by Padron, Mr. Wibracht came to realize that Travelers was a knowing participant in this conspiracy without which it could not have been carried out. In the interview, he learned that Padron, his own brother Michael Wibracht, and numerous other persons were under investigation in this scheme. Steven Wibracht was advised by the investigator that he was not personally implicated.

*Id.* at ¶¶ 41-42.

8.     On April 1, 2021, the Court granted the Motion to Reopen and authorized the reappointment of the Trustee. *Id.* at ¶ 47.

9.     On April 3, 2021, the Debtors filed their amended Schedules A/B listing the FCA Claims as property of their estate. *Id.* at ¶¶ 48-49.

D.     **Litigation and Negotiations After the Reopening of the Bankruptcy Case.**

10.     On April 5, 2021, four days after the Bankruptcy Court reopened the Bankruptcy Case, the Trustee, represented by Charles Riley, who also serves as counsel for the Wibrachts, filed a complaint under seal (the "FCA Action") in U.S. District Court for the Eastern District of Texas (the "Eastern District") to prosecute the FCA Claims that the Wibrachts raised as one of their legal theories in defense of Travelers II. *Id.* at ¶ 50.

11.     While the Bankruptcy Case was re-opened under seal and the FCA Action was pending under seal, the Wibrachts continued to oppose Travelers II by asserting the *in pari delicto* and illegality legal theories that, they claimed, were defenses to the Travelers II Litigation.

12.     On November 23, 2022, nineteen months after the Debtors' Bankruptcy Case had been re-opened under seal and eighteen months after the FCA Action was filed under seal, all without Travelers' knowledge, the Settlement Agreement that the Debtors had been negotiating with Travelers during this period was signed by Travelers. *Id.* at ¶ 62.

13.     The Settlement Agreement was intended to resolve and release all claims and legal theories that the parties contended could be asserted against one another, including the FCA Claims. *Id.* Attached hereto as **Exhibit A** is a chart comparing the Wibrachts' descriptions of the FCA Claims from Travelers II and the Motion to Reopen. The continuity of the descriptions shown in **Exhibit A** indicates that the Wibrachts' *in pari delicto* and illegality theories presented in Travelers II and the Wibrachts' FCA Claims presented in the Motion to Reopen arise from the same predicate facts.

14.     The Trustee was not a party to the Settlement Agreement and previously testified in the re-opened Bankruptcy Case that he was unaware of it. Compl. ¶ 74.

E.     **The Adversary Proceeding.**

15.     On March 19, 2024, Travelers filed the Rescission Complaint. Central to the three

6

counts set out in the Rescission Complaint is the Wibrachts' representation that they had authority to grant the releases that Travelers bargained for in the Settlement Agreement. Count I seeks declaratory judgment that the Settlement Agreement is invalid because it violates Bankruptcy Code Sections 363 and 541 and Bankruptcy Rule 9019. Compl. ¶¶ 89-109. Count II seeks rescission of the Settlement Agreement due to mistake of fact, *i.e.*, the Wibrachts did not have the requisite authority to grant releases in the Settlement Agreement. *Id.* at ¶¶ 110-31. And, Count III seeks rescission of the Settlement Agreement for fraud in the inducement. *Id.* at ¶¶ 132-50.

## LEGAL STANDARD

### I.    MOTION TO DISMISS.

16.    A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must merely state enough facts such that the claim to relief is plausible on its face. *Bell Atl. Corp.*, 550 U.S. at 570; *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A claim is facially plausible when the plaintiff pleads enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 678. A court analyzing a motion to dismiss accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff. *Id.*; *Calhoun*, 312 F.3d at 733; *Lone Star Fund V (U.S.) L.P.*, 594 F.3d at 587.

17.    Courts view motions to dismiss under FRCP 12(b)(6) with disfavor and rarely grant them. *Lormand*, 565 F.3d at 232; *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Review on a motion to dismiss must be "based on the four-corners of the plaintiff's pleadings, not the evidence that [d]efendants may seek to introduce in response." *Ramos*, 646 F.Supp.3d at 814; *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F.Supp.3d 928, 935 (E.D. Tex.

7

2016) (courts "may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint'") (quoting *Lone Star Fund V (U.S.) L.P.*, 594 F.3d at 387).

## II.    SUMMARY JUDGMENT.

18.    The Wibrachts introduce facts and exhibits[2] in support of their Motion to Dismiss that are outside of the allegations set forth in the Rescission Complaint.  If the Court considers these facts, which are outside the four-corners of the Rescission Complaint, then the Motion to Dismiss should be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d) ("If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Causey*, 394 F.3d at 288 ("If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)."). Under FRCP 56, the record is viewed "in the light most favorable to the non-moving party; all justifiable inferences will be drawn in the non-movant's favor." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

19.    Travelers disputes the material facts that the Wibrachts introduce in the Motion to Dismiss as set forth in the charts at **Exhibit B** because they contradict Travelers' allegations in the Rescission Complaint and are not supported by evidence.  The Wibrachts fail to carry their summary judgment burden and the Motion to Dismiss, if characterized as such, should be denied.

## ARGUMENT

## I.    THE COURT HAS SUBJECT MATTER JURISDICTION.

20.    The Rescission Compliant seeks a determination that the FCA Claims are property

---

[2] Exhibits 1 through 3 attached to the Motion to Dismiss are not referenced in the Rescission Complaint.

of the estate under the Bankruptcy Code, and therefore, the Wibrachts did not have legal authority to settle and release them. The Debtors represented to Travelers that they had the legal authority to execute the Settlement Agreement. Yet, all the while, without Travelers' knowledge, (i) the Wibrachts lacked the requisite authority because they had reopened their Bankruptcy Estate and caused the FCA Claims to become estate property pursuant to Section 541 of the Bankruptcy Code; and (ii) the Trustee began to administer the FCA Claims by filing the FCA Action in the Eastern District. Thus, the Wibrachts misrepresented that they had the capacity to settle the Travelers II Litigation in exchange for a release of the FCA Claims. *See* Compl., ¶¶ 41-52, 92-94, 99-101, 106-08.

21. The Wibrachts incorrectly claim that the FCA Claims are not property of the estate because the claims were abandoned by the Trustee under Section 554. *See* Defs.' Mot. to Dismiss at 9, 14. Not only is this statement at odds with the allegations in the Rescission Complaint, which the Court must accept as true, but this statement is categorically false based on the Court's record. In the Motion to Reopen, the Wibrachts asked for authority to file a motion for the Trustee to abandon the FCA Claims, or in the alternative, that the Trustee "be granted leave" to retain special counsel to prosecute the FCA Claims. Compl., ¶¶ 45-46, 99. The Court did not authorize the Trustee to abandon the FCA Claims (*id.* at ¶¶ 47, 100) nor has the Trustee filed any such pleadings under Section 554 (*id.* at ¶ 100). Instead, the Trustee "asserted that he is the party in interest with authority and standing, and he pursued the FCA Claims." *Id.* at ¶¶ 100-01.

22. Moreover, the Wibrachts should be judicially estopped from taking the position that the FCA Claims were somehow abandoned pursuant to Section 554 in connection with their initial Bankruptcy Case filing. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). In the Motion to Reopen, the Wibrachts acknowledged to this Court that the FCA Claims were not listed

in connection with their initial Bankruptcy Case filings and <u>were</u> property of the estate when they sought to list the FCA Claims in amended schedules for the Trustee to abandon or administer. Compl. ¶¶ 41-46, 99. Relying on these representations, the Court: (a) granted the Motion to Reopen; (b) gave the Wibrachts leave to file amended schedules listing the FCA Claims; (c) reappointed the Trustee to administer the FCA Claims; and (d) approved the Trustee's retention of the Wibrachts' counsel, Charles Riley, as special counsel to pursue the FCA Claims. *Id.* at ¶¶ 41-52. The Wibrachts' current flip-flop is consistent with their prior behavior in the Bankruptcy Case – they will argue whatever they perceive suits them in the moment, without regard for any inconsistent statements, sworn or otherwise, that they may have previously made. *Id.* at ¶¶ 19-33.

23.     Without question, this Court has subject matter jurisdiction over the Rescission Complaint. It has full authority under 28 U.S.C. § 1334 to exercise "original and exclusive jurisdiction" over "all cases" asserted under the Bankruptcy Code, and "original but not exclusive jurisdiction" of all civil proceedings arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(a)-(b).[3] Specifically, this Court possesses "<u>exclusive jurisdiction</u> (1) <u>of all the property</u>, wherever located, of the debtor as of the commencement of such case, and <u>of property of the estate</u>[.]" 28 U.S.C. § 1334(e)(1) (emphasis added); *see also In re Royce Homes, LP*, 652 B.R. at 496 ("Any litigation about the nature and extent of the property of the estate … lies within this [bankruptcy] Court's exclusive jurisdiction under 28 U.S.C. § 1334(e)."); *In re Duval Cty. Ranch Co.*, 167 B.R. at 849 ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court.").[4]

---

[3] The Western District's October 4, 2013 *Order of Reference of Bankruptcy Cases and Proceedings* refers all bankruptcy matters under 28 U.S.C. § 1334 to the Bankruptcy Court's jurisdiction.

[4] *See also In re Gandy*, 299 F.3d 489, 499 (5th Cir. 2002) ("bankruptcy court and the district court acting as one unit have exclusive jurisdiction over all of the property, 'wherever located,' of the Debtor, and of property of her estate"); *Matter of Wood*, 825 F.2d 90, (5th Cir. 1987) (stating that bankruptcy courts have subject matter jurisdiction over any

24.     In the recently decided case of *Royce Homes*, the bankruptcy court denied a motion for remand and/or abstention of a removed state-court action on analogous facts. *In re Royce Homes, LP*, 652 B.R. at 492-93. In *Royce Homes*, the bankruptcy court explained its independent, exclusive jurisdiction over property of the bankruptcy estate pursuant to 28 U.S.C. § 1334(e)(1). *See id.* at 494.

25.     The Rescission Complaint, like the question at issue in *Royce Homes*, is subject to the Court's exclusive jurisdiction because this Court is requested to make declaratory judgments concerning (i) property of the estate (*i.e.*, the FCA Claims); (ii) the person with authority and control over property of the estate (*i.e.*, the Trustee), and (iii) a debtor's authority to grant releases of claims that are estate property. When faced with similar questions, along with challenges to its jurisdiction, the bankruptcy court in *Royce Homes* determined:

> The lawsuit questions the validity and enforceability of the [agreement]; and whether it ever became part of the Debtor's estate. Proceedings to determine whether something is estate property or somehow stopped being estate property is a core proceeding under Section 157(b)(2)(A). …
>
> …
>
> Any dispute about [the trustee's] authority arises in and under the Chapter 7 case, and is thus within the Court's exclusive jurisdiction.

*In re Royce Homes, LP*, 652 B.R. at 495-96.

26.     The Rescission Complaint fundamentally requires resolution of core issues subject to this Court's subject matter jurisdiction. It is well established that matters affecting the debtor-

---

matter which could conceivably affect the administration of the estate and complaint that impacts property of the estate has potential effect on debtor's estate for subject matter jurisdiction); *In re Endeavor Highrise, L.P.*, 432 B.R. 583, 628-29 (Bankr. S.D. Tex. 2010) ("bankruptcy court will have jurisdiction over a claim for title to property of the estate" and therefore bankruptcy court will have subject matter jurisdiction); *In re Chambers*, 419 B.R. 652, 666 (Bankr. E.D. Tex. 2009) ("bankruptcy courts also have exclusive jurisdiction over all property of the estate," and "administration of property of the estate … falls within [their] core jurisdiction"); *In re Lorax Corp.*, 295 B.R. 83, 91 n. 23 (Bankr. N.D. Tex. 2003); *In re Fairchild Aircraft Corp*, 126 B.R. 717, 720 (Bankr. W.D. Tex. 1991) ("bankruptcy court clearly has subject matter jurisdiction over questions involving property of the estate").

creditor relationship, administration of the estate, and matters subject to Bankruptcy Rule 9019 approval are core proceedings under 28 U.S.C. § 157 over which this Court has subject matter jurisdiction. *See, e.g.,* 28 U.S.C. §§ 157(b)(2)(A) ("matters concerning administration of the estate") and (O) ("other proceedings affecting the liquidation" of estate assets or the debtor-creditor relationship); *see also In re Royce Homes, LP*, 652 B.R. at 495; *In re Derosa-Grund*, 567 B.R. 773, 780-81 (Bankr. S.D. Tex. 2017) (stating that disputes governed by Rule 9019 are "core proceeding[s]").[5]

## II.    SUBJECT MATTER JURISDICTION IS UNAFFECTED BY FRCP 60.

27.    The Wibrachts argue that Travelers' sole remedy in this matter is to file a motion under FRCP 60(b)(1-3) based upon alleged fraud or mistake. Defs.' Mot. to Dismiss at 7. The Wibrachts are opposing a claim that was not lodged in the Rescission Complaint. The only relief sought in the Rescission Complaint is that the Settlement Agreement itself be declared void and rescinded.[6]  As Travelers subsequently learned, the Wibrachts repudiated their releases of Travelers in the Settlement Agreement the very moment that the Settlement Agreement was purportedly signed because the Wibrachts did not have the authority to provide the releases that were essential to the parties' settlement. The Settlement Agreement states, in pertinent part:

> Steven and Erin Wibracht, on their own behalf, and on behalf of their predecessors, successors, affiliates and assigns, and their past, present, and future attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under or in concert with them, and each of them **hereby release and discharge** [Travelers] … from all **charges**, complaints, **claims**, **grievances**, **liabilities**, obligations, promises,

---

[5] *See also In re Centennial Beverage Grp., LLC*, No. 12-37901-BJH-11, 2012 WL 13345722, at *1 (Bankr. N.D. Tex. Aug. 2, 2012) (approval of settlement is a core proceeding); *In re Age Ref., Inc.*, No. 10-50501-LMC, 2010 WL 11826171, at *1 (Bankr. W.D. Tex. Aug. 12, 2010) (same).

[6] Travelers may subsequently seek relief from the Western District regarding the resolution of Travelers II. That issue, however, is not before this Court. *See, e.g.*, *Vincent v. Reynolds Mem'l Hosp., Inc.*, 728 F.2d 250, 251 (4th Cir. 1984) (vacating decision of a district court denying a motion to vacate a prior dismissal under FRCP 60(b)(6) after the movant obtained a ruling that the underlying settlement agreement was invalid).

> agreements, **controversies**, **damages**, actions, causes of action, suits, **rights**, **demands**, costs, losses, debts, **penalties**, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and **punitive damages**, **of any kind or nature whatsoever, whether in law or in equity, whether known or unknown, suspected or unsuspected**, that Steven Wibracht and Erin Wibracht have, or may have had, against Travelers, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from the Dispute and/or the GAI and/or the Lawsuit.
>
> …
>
> This Agreement resolves **any claim for relief that is, or could have been alleged** by Steven Wibracht and Erin Wibracht against Travelers, **no matter how characterized**, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute and/or the GAI and/or the Lawsuit.

Compl., ¶¶ 102-03, 112-13, 135-36 (emphasis in the original). Travelers alleges that this broad release language encompasses the FCA Claims and was an essential component (at least for Travelers) for agreeing to compromise its $14,008,058.76 claim for $60,000. *Id.*; *see also id.* at ¶¶ 36, 71-72, 114, 119-20, 122-23, 137, 142-44, 147; Ex. 1, p. 1.

28.     Pursuant to FRCP 12(b)(6), the Court must accept Travelers' averments as true and draw all reasonable inferences in favor of Travelers, as the plaintiff. *Bell Atl. Corp.*, 550 U.S. at 570; *Ramos*, 646 F.Supp.3d at 813 ("In deciding a 12(b)(6) motion, a 'court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"). The Rescission Complaint simply does not lodge a claim or request a remedy to vacate a judgment. As such, the Wibrachts' Motion to Dismiss must be denied.

29.     Even if Travelers had sought relief under FRCP 60, which it did not, the Wibrachts incorrectly assert that Travelers would be limited to FRCP 60(b)(1) (mistake/inadvertence);

13

(2) (newly discovered evidence); and/or (3) (fraud) for such relief. FRCP 60(b)(6), which provides for relief "from a final judgment, order, or proceeding for … (6) any other reason that justifies relief" would apply, however, if Travelers had invoked it. Fed. R. Civ. P. 60(b)(6). The Wibrachts' own case law explains why FRCP 60(b) applies under the circumstances.

30. Specifically, in *Yesh Music*, the Fifth Circuit examined the applicability of FRCP 60(b)(6) under similar circumstances. *Yesh Music v. Lakewood Church*, 727 F.3d 356, 362 (5th Cir. 2013). In *Yesh Music*, the plaintiff sought relief under FRCP 60(b)(6) because the defendant, who had induced the plaintiff to dismiss its clams, subsequently breached and repudiated the terms of the parties' agreement under which the plaintiff dismissed its claims. *Id.* Citing to the district court's reasoning, the Fifth Circuit <u>affirmed</u> the district court's vacatur of a dismissal under FRCP 60(b)(6):

> Plaintiffs operated with the understanding that this case would proceed in the Southern District of Texas. Surely, Plaintiffs' choice to dismiss the original complaint was voluntary, affirmative, and tactical. Plaintiffs' dilemma is unique, however, in that the parties concluded that the action would proceed in Texas, albeit without determining the precise procedural mechanism for doing so. As the parties had come to this agreement, it is appropriate to vacate the voluntary dismissal pursuant to Rule 60(b)(6), as failing to do so would cause a manifest injustice.

*Id.* at 363. The Fifth Circuit further stated that: "The district court did not abuse its discretion in concluding that it would have been unfair to permit [the defendant] to agree to reinstatement of the case in Texas, and then allow it to renege on its agreement because of the procedural path taken." *Id.*

31. Notably, none of the cases that the Wibrachts rely upon stand for the proposition that Travelers' sole basis for relief is proceeding under FRCP 60(b), as they incorrectly argue to this Court. *See, e.g.*, *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 417 (5th Cir. 2018); *Yesh Music*, 727 F.3d at 363. To the contrary, a separate standalone proceeding to evaluate the validity of

14

and/or enforcement of a settlement agreement is a well-accepted option for parties. *See, e.g.*, *Keeling v. Sheet Metal Works Inter. Ass'n Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991); *Vincent*, 728 F.2d at 251; *Calco Crew & Workboats, LLC v. Sunray Mktg., LLC*, No. CV 20-2660-WBV-MBN, 2021 WL 3509648, at *3 (E.D. La. Aug. 10, 2021) (stating that a party has two remedies when a settlement agreement is breached: (1) an action to enforce the agreement; or (2) a FRCP 60(b)(6) motion to vacate the prior dismissal).

32.     It would be unfair for the Wibrachts to purport to release their FCA Claims as inducement to Travelers' dismissal of its claims against them, while the Wibrachts knew full well that they lacked the legal authority to release the FCA Claims. After all, when the Settlement Agreement was presented to Travelers the Wibrachts had reopened their Bankruptcy Case under seal and the Trustee had already begun to pursue the FCA Claims against Travelers on behalf of the estate. It is under such scenarios, *i.e.*, a breach of a settlement agreement, that federal courts find that FRCP 60(b)(6) relief is warranted. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (recognizing that breach of a settlement agreement constituted grounds for vacating a dismissal under FRCP 60(b)(6)); *Celtic Marine Corp. v. James C. Justice Cos.*, No. CIV.A. 11-3005, 2013 WL 2390018, at *3 (E.D. La. May 30, 2013), *aff'd*, 760 F.3d 477 (5th Cir. 2014) (denying motion for reconsideration and finding motion to reopen for breach of settlement agreement was proper); *Trade Arbed, Inc. v. Afr. Exp. MV*, 941 F. Supp. 68, 70 (E.D. La. 1996) (granting relief under FRCP 60(b)(6) for breach of settlement agreement); *Keeling*, 937 F.2d at 410; *Vincent*, 728 F.2d at 251.[7]

---

[7] *See also Copeland v. D&J Constr., LLC*, No. 3:13-CV-4432-N-BH, 2016 WL 8116144, at *2 (N.D. Tex. Dec. 9, 2016), *R. & R. adopted*, 2017 WL 386830 (N.D. Tex. Jan. 27, 2017).

## III.    TRAVELERS' CLAIMS ARE NOT BARRED BY RES JUDICATA.

33.     Contrary to the Wibrachts' assertions, none of Travelers' claims are barred by res judicata. First, res judicata is an affirmative defense, and generally not grounds to dismiss a claim under FRCP 12(b)(6). *See* FRCP 8(c)(1); *see also Pike v Office of Alcohol & Tobacco Control of the La. Dept. of Revenue*, 157 F.Supp.3d 523, (M.D. La. 2015) ("[g]enerally, a *res judicata* contention cannot be brought in a motion to dismiss; it must be plead as an affirmative defense") (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n. 2 (5th Cir. 2005)). Second, to prevail on the affirmative defense of res judicata, a defendant must prove the elements, which include evidence that "the same claim or cause of action is involved in both suits." *Grynberg v. BP P.L.C.*, 855 F.Supp.2d 625, 649 (S.D. Tex. 2012), *aff'd*, 527 F. App'x 278 (5th Cir. 2013). "The critical issue is whether the two actions are based on the same nucleus of operative facts." *Ramos v. United States*, 455 F. App'x 424, 426 (5th Cir. 2011).

34.     The claims asserted by Travelers in this adversary proceeding are not the same claims as those presented in Travelers I or Travelers II. In those previous cases, Travelers asserted breach of contract claims against the Wibrachts under an indemnity agreement. The Rescission Complaint is based upon principles of the Bankruptcy Code and seeks to rescind or void the Settlement Agreement. The operative facts necessary to prove Travelers' current causes of action are different. Travelers could not assert claims related to the Settlement Agreement in Travelers I and Travelers II, as the Settlement Agreement came into effect after those proceedings.

## IV.    TRAVELERS STATES A CLAIM FOR MISTAKE OF FACT.

35.     Count II of the Rescission Complaint properly states a claim for mistake of fact. To plead a mistake of fact warranting rescission of a contract, Travelers must plead "that the parties contracted in ignorance of or under a mistake as to fact which was material and essential to an understanding of the consequences of the agreement" or that "one of the parties to the transaction"

16

either "suppress[ed] or conceal[ed]" facts material to the transaction. *Md. Cas. Co. v. McWilliams*, 175 F.2d 475, 476 (5th Cir. 1949) (affirming rescission of a settlement agreement). Travelers satisfies both tests. Travelers alleges that: (a) the Wibrachs' purported authority to grant Travelers a release of the FCA Claims "was an essential term of the Settlement Agreement;" (b) the Wibrachs were without authority to grant the releases because they reopened the Bankruptcy Case under seal to allow the Trustee to administer the FCA Claims; (c) but for the release of the FCA Claims, Travelers would not have executed the Settlement Agreement; and (d) consequently, Travelers did not receive its bargained for consideration. Compl. ¶¶ 111-31. Under FRCP 12(b)(6), the Court must accept these facts as true and draw all inferences in Travelers' favor. As such, Travelers states a claim for mistake of fact.

36.     The Wibrachs avoid confronting the legal sufficiency of Count II (which alone is grounds for denying the Motion to Dismiss). Instead, the Wibrachs introduce facts and legal theories that were not set out in the Rescission Complaint and argue that it is not possible for a relator to release or settle an FCA claim. The Wibrachs' argument is a red herring.[8] By entering into the release under the Settlement Agreement, the Wibrachs represented that they had full authority to "release and discharge" Travelers from "all … claims … of any kind … that is, or could have been alleged … no matter how characterized." Compl., ¶¶ 111-12. The Wibrachs raised their FCA Claims in Travelers II under the labels of "*in pari delicto*" and illegality. *See* **Exhibit A** (chart comparing claims). As such, the Wibrachs, under the Settlement Agreement,

---

[8] The Wibrachs' reliance on *Ins. Distrib. Consulting, LLC v. Freedom Equity Group, LLC*, No. 3:20-cv-96, 2022 WL 1491967 (S.D. Tex. May 11, 2022) is likewise distinguishable. In *Ins. Distrib.*, one side failed to clarify that an individual was included in the term "parties" set forth in an agreement prior to entering into the agreement. Importantly, in refusing to rescind the agreement, the court noted that "nothing suggests any essential unfairness in how the [agreement] was reached nor was there any great flaw in the process." *Id.* at *3. Importantly, the party seeking to rescind the agreement knew of all the facts when it executed the agreement. In contrast, as alleged in the Rescission Complaint, Travelers did not know and could not have known that the Wibrachs had already taken steps to repudiate their agreement to release all claims against Travelers, *e.g.*, reopening their Bankruptcy Case under seal to have the Trustee re-appointed to prosecute the claims, and supporting the Trustee's filing the FCA Action.

agreed to never pursue the FCA Claims, which would have precluded the Wibrachts from reopening the Bankruptcy Case for the express purpose of causing the Trustee to pursue the FCA Claims against Travelers in the first place. Compl., ¶¶ 111-12.

37.     The Wibrachts immediately repudiated the Settlement Agreement, as their release and promise never to pursue the FCA Claims was false. *Id.* at ¶¶ 111-31. As Travelers avers in the Rescission Complaint, timing is important, as the sequence of the facts shows that the Wibrachts filed their Motion to Reopen the Bankruptcy Case under seal and their own counsel, Mr. Riley, acted as the Trustee's counsel to file the FCA Case under seal more than a year <u>before</u> the Settlement Agreement was purportedly executed. This demonstrates that the Wibrachts were, without question, devoid of authority to provide the releases that they purported to make in the Settlement Agreement. *Id.* at ¶¶ 116-18.

38.     As alleged in the Rescission Complaint, if Travelers had known these facts (which it could not have known because of the sealed nature of the reopened case), it would not have entered into the Settlement Agreement. *Id.* at ¶¶ 4, 71, 122. The Wibrachts wanted the benefit of the Settlement Agreement (*i.e.*, the dismissal of Travelers II) while knowing full well that they could not deliver on their part of the agreement – the releases. As such, the Rescission Complaint plausibly pleads a claim for mistake of fact and the Wibrachts' attempts to mischaracterize the claim as a mistake of law fail under the FRCP 12(b)(6) standard.

**V.     TRAVELERS STATES A CLAIM FOR FRAUDULENT INDUCEMENT.**

39.     A claim for fraudulent inducement is comprised of the following elements: (1) a material misrepresentation was made that was false; (2) was either known to be false when made or was asserted without knowledge of its truth; (3) it was intended to be acted on; (4) reliance; and (5) injury. *In re Carroll*, 464 B.R. 293, 316 (Bankr. N.D. Tex. 2011) (internal citations omitted); *Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011).

40.     Travelers alleges that: (a) the Wibrachts misrepresented to Travelers that they had the legal authority to execute the Settlement Agreement and release the FCA Claims (Compl. ¶¶ 134-38); (b) the Wibrachts and their counsel knew that the Bankruptcy Case had been reopened and that the Wibrachts no longer had legal authority over the FCA Claims (*id.* at ¶¶ 139-41, 146); (c) the Wibrachts and their counsel knew that, but for the Wibrachts' representations concerning their ability to enter into the Settlement Agreement and release the FCA Claims, Travelers would not have entered into the Settlement Agreement (*id* at ¶ 145); (d) Travelers relied on the Wibrachts' representation (*id.* at ¶ 147); and (e) Travelers was injured by the Wibrachts' failure to give Travelers its bargained for consideration, *i.e.*, a release of the FCA Claims (*id.* at ¶ 149).  Accepting these facts as true, Travelers states a claim for fraudulent inducement.

41.     The Motion to Dismiss does not find fault with how Count III is pleaded.  Instead, the Wibrachts introduce facts outside of the four corners of the Rescission Complaint and present their defense to Count III.  They argue that they are not liable for fraud in the inducement because Travelers retained the benefits of the Settlement Agreement – a new averment that is not included in the Rescission Complaint.  Travelers does not aver that it retained the benefits of the Settlement Agreement in the Rescission Complaint.  In fact, it is quite the opposite, Travelers avers that it did not receive the benefits of the Settlement Agreement.  The Wibrachts' argument requires the Court to ignore: (a) Travelers' allegations in the Rescission Complaint that it executed the Settlement Agreement to obtain a release of the FCA Claims, but yet now is defending the FCA Action because of the Wibrachts' actions (Compl., ¶¶ 134-49); and (b) paragraph 12[9] of the Settlement Agreement wherein the Wibrachts specifically represented that they had the requisite authority to

---

[9] Paragraph 12 states: "By signing below, each Party warrants and represents that it is authorized to execute this Agreement or the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-laws, covenants, and/or other restrictions placed upon the Party by its governing authorities."  Compl., Ex. 1, ¶ 12.

execute the Settlement Agreement to give the bargained-for release (*id.* at Ex. 1, ¶ 12).  The Motion to Dismiss merely sets out the Wibrachts' intended defense to Count III.  There is no allegation that Count III fails to plead facts that meet the elements of claim for fraud in the inducement and, as shown, the claim is properly pleaded.

## VI.     TRAVELERS' REQUEST FOR RESCISSION IS PROPERLY PLEADED.

42.     The Wibrachts argue that Travelers failed to adequately plead the elements of rescission.  Rescission, however, is an equitable remedy, not a cause of action.  *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 837 (Tex. App.—Houston 2015) ("Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment.").  Consequently, Travelers' entitlement to a remedy is not a relevant issue for consideration in connection with a FRCP 12(b)(6) motion. *Charles v. Front Royal Volunteer Fire & Rescue Dept., Inc.*, 21 F.Supp.3d 620, 629 (W.D. Va. 2014) ("'[A] demand for relief is not part of a plaintiff's statement of the claim.' … As such, the nature of the relief included … is immaterial to the question of whether a complaint adequately states a claim upon which relief can be granted.") (citing *Bontkowski v. Smith*, 305 F.3d 757, 761-62 (7th Cir. 2002)).[10]

## CONCLUSION

WHEREFORE, Travelers respectfully requests that the Court enter an Order: (a) denying the Wibrachts' Motion to Dismiss or (b) granting leave to amend the Rescission Complaint should the Court grant the Motion to Dismiss; and (c) granting such other and further relief as may be just and proper.

---

[10] The legal remedy of rescission is the appropriate equitable remedy when an agreement is void, entered into on the basis of mistake, and/or procured by fraud in the inducement.  *See Lenderman v. Austin Cty.*, No. Civ.A. H-05-308, 2005 WL 2277625, at * 1 (S.D. Tex. 2005); *Nelson v. Najm*, 127 S.W.3d 170, 176-77 (Tex. App.—Houston 2003) (holding that an injured party may elect rescission "[w]hen there is fraud in the inducement to sign a contract").

DATE: May 20, 2024        Respectfully submitted,


**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

By:     */s/ Randall A. Pulman*
         Randall A. Pulman
         Texas State Bar No. 16393250
         rpulman@pulmanlaw.com
         Leslie Hyman
         Texas State Bar No. 00798274
         lhyman@pulmanlaw.com

-AND-

Jennifer L. Kneeland (*Admitted Pro Hac Vice*)
Email: jkneeland@watttieder.com
Marguerite Lee DeVoll (*Admitted Pro Hac Vice*)
Email: mdevoll@watttieder.com
Lawrence J. O'Brien (*Admitted Pro Hac Vice*)
Email: ljobrien@watttieder.com
**WATT, TIEDER, HOFFAR & FITZGERALD, LLP**
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1000
Facsimile: (703) 893-8029


**ATTORNEYS FOR TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify that, on May 20, 2024, a true and correct copy of this motion has been

served upon the following parties-in-interest in the manner indicated below.

***Via CM/ECF: charlesriley@rileylawfirm.com***
Charles A. Riley
Charles Darby Riley
Riley & Riley,
320 Lexington Avenue,
San Antonio, TX 78215.

***Via CM/ECF: jcrodlaw@gmail.com***
Jose C. Rodriguez
Chapter 7 Trustee
1101 W. 34th Street, PMB 223
Austin, TX  78705-1907.

***Via CM/ECF: hervol@sbcglobal.net***
H. Anthony Hervol
Law Office of H. Anthony Hervol
4414 Centerview Dr., Suite 207
San Antonio, TX  78228

/s/ *Randall A. Pulman*
Randall A. Pulman

EXHIBIT A

**Comparison Between the Wibrachts' Allegations Made in Travelers II and the Motion to Reopen Their Bankruptcy Case**

| Wibrachts' Original Answer in Travelers II[1]<br><br>(Jan. 29, 2021) | Wibrachts' Motion to Reopen Their Bankruptcy Case[2]<br><br>(Mar. 25, 2021) |
|---|---|
| "14. Defendants plead the affirmative defenses of *in pari delicto* and illegality, in that the construction contracts and bids for which the bonds in question were issued were illegal and Plaintiff, by and through its agents and employees including but not limited to Time Insurance Agency, John W. Schuler, Tom Mullanax, Terry W. Neilson and Robert G. Capron, was a knowing participant in such illegality.<br><br>15. Specifically, Plaintiff knew that each of the companies for which the bonds in question were written was illegally claiming to qualify as minority-owned or service-disabled veteran-owned small businesses but were in fact controlled by Michael Padron and MAPCO, Inc. and thus could not properly claim such status under applicable federal regulations including Title 13 Part 124 of the Code of Federal Regulations and Title 13 Part 125 Subpart B of the Code of Federal Regulations.[3]<br><br>16. Plaintiff issued the bonds at issue in connection with construction contracts and bids that were only available to minority-owned or service-disabled veteran-owned small businesses while knowing that in fact the companies in question were not legitimate minority-owned or service-disabled veteran-owned small businesses and/or had not disclosed their relationship with Michael Padron and MAPCO, Inc. to the Small Business Administration as required. | "1. On March 17, 2015, [Travelers] filed C.A. No. 5:15-cv-00200 in the District Court of the Western District of Texas ("Travelers I") against [Debtors] Mr. and Mrs. Wibracht and numerous others seeking to recover under cross indemnity agreements it had obtained from a network of legally unrelated entities covertly controlled by Michael Padron ("Padron"). The indemnity agreements supported bonds issued by Travelers for entities that it knew could not qualify individually for the bonds and which were required for the entities to qualify to bid on Government set-aside contracts under Small Business Administration programs intended to benefit small businesses, such as Service-Disabled Veteran-Owned Small Businesses ("SD[V]OSBs"). …<br><br>11. In July of 2020, Steven Wibracht received and read a deposition given by Ruben Villarreal ("Villarreal"), the legal, but nominal, owner of one of the entities controlled by Padron, Blackhawk Ventures, LLC ("Blackhawk"), … Villareal had testified in a post-judgment deposition in or around January of 2020. Villarreal testified that the purpose of a management agreement between Blackhawk and Federal Management Solutions ("FMS") 'was to permit persons that were not disabled military veterans to have beneficial (but not legal) ownership of Blackhawk Ventures, so they could capitalize on Mr. Villarreal's status as a disabled veteran, to obtain certain benefits available to disabled veterans under applicable law, including under programs administrated by the United States Small Business Administration.' … Mr. Wibracht was |

---

[1] *See* Travelers II, Dkt. 9.
[2] *See* Bankruptcy Case, Dkt. 139.
[3] 13 C.F.R. §§ 124.1-124.704 is titled "8(a) Business Development/Small Disadvantaged Business Status Determinations" and 13 C.F.R. §§ 125.12-125.14 (subpart B) is titled "Eligibility Requirements for the SDVO SBC Program."  These are some of the regulations allegedly violated giving rise to the FCA Claims.

**Comparison Between the Wibrachts' Allegations Made in Travelers II and the Motion to Reopen Their Bankruptcy Case**

| Wibrachts' Original Answer in Travelers II[1]<br><br>(Jan. 29, 2021) | Wibrachts' Motion to Reopen Their Bankruptcy Case[2]<br><br>(Mar. 25, 2021) |
|---|---|
| 17. The companies in question could not have bid for nor received such contracts but for Plaintiff's knowing participation in this illegal scheme.<br><br>18. As such, the construction contracts for which the bonds were written were illegal and void, and the bonds issued in connection with those construction contracts which give rise to the claims made the basis of this indemnity action are also void." | previously not aware that that Padron was alleged to have illegally controlled Blackhawk through FMS and thereby had defrauded the SBA.<br><br>12. Thus, in July of 2020, Mr. Wibracht contacted the SBA Office of the Inspector General ("OIG") to disclose information regarding this fraud. It was only after Mr. Wibracht was interviewed by investigators with the SBA's Office of Inspector General in connection with the SBA's criminal investigation of Padron and others involved with the Padron/MAPCO group of companies, that he began to understand the extent to which Padron's creation and maintenance an interdependent group of 8(a) minority owned small businesses and SDVOSBs and constituted a criminal conspiracy to defraud the United States. Because he was being sued by Travelers for indemnity in connection with the bonds it had issued to the companies controlled by Padron, Mr. Wibracht came to realize that Travelers was a knowing participant in this conspiracy without which it could not have been carried out. …<br><br>14. In late December 2020 or January 2021, Mr. Wibracht searched the internet for information regarding fraudulent schemes against the Small Business Administration, with the idea in mind of using the illegality of the bonds as a defense to Travelers' action to recover indemnity from him and his wife in connection with the cross-indemnity agreements supporting the bonds. In this research, Mr. Wibracht uncovered two similar cases under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.* This was his first notice that he might have the right to sue on behalf of the Government and receive a Relator's share if the action proves successful." |

EXHIBIT B

| Factual Allegations in the Motion to Dismiss beyond the Scope of the Rescission Complaint and Disputed by Travelers | |
|---|---|
| **Factual Allegations in the Motion to Dismiss** | **Travelers' Response[1]** |
| "03/06/2020 - Travelers files a Motion to Dismiss its claims against the Wibrachts in Travelers I, which Judge Ezra grants on 03/23/2020, thereby dismissing Travelers' claims against the Wibrachts without prejudice. *See* Exhibit 1, Motion and Order to Dismiss attached hereto and incorporated herein by reference." Mot. to Dismiss at 2. | Not alleged in Rescission Complaint.<br><br>Travelers disputes that the stipulated dismissal has any impact on the Court's subject matter jurisdiction or any res judicata effect on the claims asserted herein. *See* Opp. to Mot. to Dismiss ¶¶ 27-34. |
| "11/23/2022 – All parties to Travelers II sign a stipulation dismissing all of Travelers' claims against the Wibrachts with prejudice under Rule 41, Fed. R. Civ. P. See Exhibit 3, Stipulation of Dismissal, attached hereto and incorporated herein by reference."  Mot. to Dismiss at 3. | Not alleged in Rescission Complaint.<br><br>Travelers disputes that the Settlement Agreement corresponding with the stipulation was signed by all parties. *See* Compl. ¶¶ 54-74.<br><br>Travelers disputes that the stipulated dismissal has any impact on the Court's subject matter jurisdiction or any res judicata effect on the claims asserted herein. *See* Opp. to Mot. to Dismiss ¶¶ 27-34. |
| "Furthermore, Travelers has continuously accepted payments from the Wibrachts under the Settlement Agreement since November 2022. Travelers has thereby affirmed the Settlement Agreement and is not entitled to rescission because it failed to act promptly upon discovery of the alleged fraud and did not surrender the benefits of the Settlement Agreement - both of which are required for rescission."  Mot. to Dismiss at 5. | Not alleged in Rescission Complaint.<br><br>Travelers disputes the allegation that it has retained benefits. Travelers executed the Settlement Agreement to obtain a release of the FCA Claims.  It never received the benefit it bargained for. The Wibrachts repudiated their obligations under the Settlement Agreement. *See* Compl., ¶¶ 134-49; Opp. to Mot. to Dismiss ¶¶ 39-40. |

---

[1] Travelers reserves the right to supplement its responses as more information is learned during discovery.

| Factual Allegations in the Motion to Dismiss beyond the Scope of the Rescission Complaint and Disputed by Travelers | |
|---|---|
| **Factual Allegations in the Motion to Dismiss** | **Travelers' Response[1]** |
| "Travelers' First Amended Complaint to rescind and void the Settlement Agreement omits the single most important fact before the Court: the lawsuit which forms the basis of the Settlement Agreement was dismissed with prejudice by a stipulation signed by all parties or their counsel, dated November 23, 2022. See Exhibit 2, Stipulation of Dismissal with Prejudice." Mot. to Dismiss at 6. | Not alleged in Rescission Complaint.<br><br>Travelers disputes that the stipulated dismissal has any impact on the Court's subject matter jurisdiction or any res judicata effect on the claims asserted herein.  *See* Opp. to Mot. to Dismiss ¶¶ 27-34. |
| "Furthermore, the November 23, 2022 Stipulation of Dismissal with Prejudice was Travelers' second dismissal of its identical indemnity claims against the Wibrachts arising out of the construction bonds in question."  Mot. to Dismiss at 7. | Not alleged in Rescission Complaint.<br><br>Travelers disputes that the stipulated dismissal has any impact on the Court's subject matter jurisdiction or any res judicata effect on the claims asserted herein.  *See* Opp. to Mot. to Dismiss ¶¶ 27-34. |
| "Additionally, Travelers should be estopped from challenging the Settlement Agreement since it has accepted the benefits of the Settlement Agreement by accepting the payments from Relator Wibracht under the Settlement Agreement since November 2022."  Mot. to Dismiss at 8. | Not alleged in Rescission Complaint.<br><br>Travelers disputes the allegation that it has retained benefits. Travelers executed the Settlement Agreement to obtain a release of the FCA Claims.  It never received the benefit it bargained for. The Wibrachts repudiated their obligations under the Settlement Agreement.  *See* Compl., ¶¶ 134-49; Opp. to Mot. to Dismiss ¶¶ 40-41. |
| "Travelers has also failed to surrender all of the benefits under the contract, as is required for rescission."  Mot. to Dismiss at 9. | Not alleged in Rescission Complaint.<br><br>Travelers disputes the allegation that it has retained benefits. Travelers executed the Settlement Agreement to obtain a release of the FCA Claims.  It never received the benefit it bargained for.  The Wibrachts repudiated their obligations under the |

| Factual Allegations in the Motion to Dismiss beyond the Scope of the Rescission Complaint and Disputed by Travelers | |
|---|---|
| **Factual Allegations in the Motion to Dismiss** | **Travelers' Response[1]** |
| | Settlement Agreement. *See* Compl., ¶¶ 134-49; Opp. to Mot. to Dismiss ¶¶ 40-41. |

| Factual Allegations in the Motion to Dismiss Contradicting Factual Allegations Set Forth in the Rescission Complaint | |
|---|---|
| **Factual Allegations in Motion to Dismiss** | **Paragraphs of Rescission Complaint Contradicted** |
| "Sept. 2019 - Bankruptcy closed with Trustee's no asset report, and abandonment of the Wibrachts alleged and scheduled counterclaims against Travelers arising out of the indemnity claims asserted by Travelers against the Wibrachts in Travelers I." Mot. to Dismiss at 2. | Travelers maintains that the FCA Claims were not abandoned. *See* Compl. ¶¶ 45, 46, 99, 100. |
| "The Trustee abandoned such counterclaims under 11 USC § 554, and that abandonment was not reversed by reopening the bankruptcy estate to administer the FCA claims." Mot. to Dismiss at 9. | Travelers maintains that the FCA Claims were not abandoned. *See* Compl. ¶¶ 45, 46, 99, 100. |
| "The only claims released by the Wibrachts via the Settlement Agreement had been previously abandoned by the Trustee, and therefore the Wibrachts were free to settle them in response to a lawsuit filed by Travelers after it successfully sued to deny them a discharge." Mot. to Dismiss at 14. | Travelers maintains that the FCA Claims were not abandoned. *See* Compl. ¶¶ 45, 46, 99, 100. |